53 P.3d 963 (2002)
2002 UT App 270
STATE of Utah, in the interest of G.B., C.B., L.B., E.B., and B.B., persons under eighteen years of age.
E.B., Appellant,
v.
State of Utah, Appellee.
No. 20000846-CA.
Court of Appeals of Utah.
August 8, 2002.
*964 Jeffrey J. Noland, Noland Law Office, Salt Lake City, for Appellant.
Mark L. Shurtleff, Attorney General, and Carol L. Verdoia, Assistant Attorney General, Salt Lake City, for Appellee.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before BILLINGS, Associate P.J., and DAVIS and GREENWOOD, JJ.

OPINION
DAVIS, Judge:
¶ 1 Appellant E.B. (Mother) challenges the juvenile court's termination of her parental rights. She argues that: (1) the juvenile court erred in determining that she was an unfit parent and that her children were neglected, (2) the evidence was insufficient to support the juvenile court's findings, (3) the juvenile court abused its discretion by denying her motion to strike the testimony of Ms. Jo-Anne Collier, and (4) the juvenile court failed to specifically consider the requirements of Utah Code Ann. § 78-3a-409 (Supp.2001).[1] Mother's first two arguments address the sufficiency of evidence in support of the juvenile court's findings regarding unfitness, neglect, best interest of the children, and parental unfitness. We will address these arguments together.

BACKGROUND
¶ 2 Mother is the natural mother of six children: G.B., C.B., L.B., E.S.B., B.B., and J.B. The two older children, G.B. and C.B., were removed from the State's termination *965 petition and are currently living in long-term foster care placements. This appeal involves the termination of parental rights to L.B., E.S.B., and B.B. The father, R.B., voluntarily relinquished his parental rights to the same three children and is not a party to this appeal. The father has filed a separate appeal from the termination proceeding involving J.B., which we have affirmed today in a separate opinion. See In re J.B., 2002 UT App 268, 53 P.3d 968.
¶ 3 This family has an extensive history with the Division of Child and Family Services (DCFS). Between December 1986 and November 1998, DCFS received approximately eighteen referrals of child abuse and neglect by the parents, at least ten of which were substantiated on grounds of sexual abuse, physical abuse, physical neglect, failure to protect, emotional maltreatment, and medical neglect. In 1996, the children were first placed in foster care after being adjudicated as neglected children. The children were returned home in November 1997.
¶ 4 On or about October 9, 1998, E.S.B. disclosed to her therapist that she had recently been sexually abused by a male friend of her parents who had been living with and caring for the children in her parents' home. Mother believed the friend would never do such a thing and told DCFS that she thought E.S.B. had made up the story. Because Mother refused to ensure that this friend would be kept away from E.S.B., the child was placed into shelter care. On October 13, 1998, the other four children were removed from the family home. At a shelter hearing, Mother again asserted her belief that E.S.B. had made up the story. The juvenile court ordered DCFS to return the children to their home that day. Prior to their return, however, the children were interviewed at the Children's Justice Center. During the interview, E.S.B. asserted that her siblings, C.B., L.B., and B.B., had also been sexually inappropriate with her. C.B. and L.B. admitted touching each other's and E.S.B.'s genitalia on a frequent or regular basis. Based upon this new information, the children were not returned home, but instead were placed in shelter care.
¶ 5 At a hearing on October 16, 1998, DCFS was given temporary custody of the children. Custody and guardianship was granted to DCFS on December 9, 1998, after the juvenile court determined that the children had been abused and neglected by both parents. The two oldest children, G.B. and C.B., remain in foster care with long-term foster care as the permanency goal. Pending the outcome of this appeal, L.B., E.S.B., and B.B. are in foster homes awaiting adoption.
¶ 6 Over the many years DCFS was involved with this family, the parents were provided with numerous services. These services included homemaking; nutrition; hygiene; parent advocacy; peer parenting; parenting classes; caseworker involvement; individual, couple, and family therapy; sex abuse treatment; handicapped and medical assistance; an attachment evaluation; psychological evaluations; visitation; Court-Appointed Special Advocate (CASA) support; transportation; and special education. In addition, family preservation services were provided on a nearly ongoing basis since 1993.
¶ 7 The State filed a verified petition for termination of parental rights on August 13, 1999. Trial on the State's petition concluded on September 11, 2000.[2] Based on the evidence presented and the testimony given, the juvenile court found that Mother had neglected her children by failing to protect them from sexual activity among themselves. The court further found that because she was in the home when the majority of the acts involving her husband and the children occurred, she had failed to protect the children from sexual abuse by her husband.
¶ 8 The court also found that DCFS had provided numerous services to this family. However, because Mother was unable or unwilling to recognize the family's problems, they were of little benefit. Accordingly, on October 23, 2000, pursuant to Utah Code Ann. § 78-3a-407 (Supp.2001), Mother's parental *966 rights to L.B., E.S.B., and B.B. were terminated based on grounds of unfitness, neglect, failure to remedy circumstances causing out-of-home placement, and best interest of the children.

ISSUES AND STANDARDS OF REVIEW
¶ 9 First, Mother asserts that the evidence supporting the juvenile court's findings and ultimate decision to terminate her parental rights was insufficient. Mother challenges the evidence supporting the juvenile court's findings of: (1) unfitness, (2) neglect, (3) failure of parental adjustment, and (4) best interest. "`Findings of fact in a parental rights termination proceeding are overturned only if they are clearly erroneous.'" In re S.L., 1999 UT App 390, ¶ 19, 995 P.2d 17 (quoting In re S.T, 928 P.2d 393, 400 (Utah Ct.App.1996)). "Moreover, we defer to the juvenile court because of its advantageous position with respect to the parties and the witnesses in assessing credibility and personalities." Id. at ¶ 20 (quotations and citation omitted).
¶ 10 Next, Mother alleges that the juvenile court erred in allowing Ms. Jo-Anne Collier to testify as an expert witness. This court has "repeatedly recognized that trial courts have considerable discretion over the admission of expert testimony." In re G.Y., 962 P.2d 78, 83 (Utah Ct.App.1998). Thus, making determinations as to who qualifies as an expert witness and the admissibility of the witness's testimony fall within the discretion of the trial court. "Absent a clear abuse of this discretion, we will not reverse the trial court's determination." Id.
¶ 11 Mother's final argument is that the juvenile court failed to consider, or improperly applied, the requirements of Utah Code Ann. § 78-3a-409 (Supp.2001). Application of statutory law to the facts presents a mixed question of fact and law. We review the juvenile court's findings for clear error and its conclusions of law for correctness, affording the court "some discretion in applying the law to the facts." In re C.B., 1999 UT App 293, ¶ 5, 989 P.2d 76.

ANALYSIS

I. Sufficiency of the Evidence
¶ 12 In reviewing the entire record in this case, we conclude that there was clear and convincing evidence to support the challenged findings. "We note again that we ... defer to the juvenile court's ability to observe the witnesses and weigh their credibility, in this case, over a period of [several years]." S.L., 1999 UT App 390 at ¶ 24, 995 P.2d 17. With that in mind, we will address Mother's claims as presented.
¶ 13 Mother first challenges the juvenile court's findings of unfitness and neglect. Following the termination trial, the juvenile court made numerous findings regarding Mother's unfitness as a parent and her continual neglect of her children. Mother's argument, however, is based solely upon the findings regarding Mother's knowledge of and response to the sexual abuse of E.S.B. by her father. Mother does not challenge the findings regarding her children's repeated sexual victimization, their sexual activity with each other, her ongoing failure to protect the children, her continued denial of the abuse, and her failure to change despite the numerous services provided. These findings alone support the juvenile court's determination.
¶ 14 Nonetheless, after careful review of the record, we conclude that there was ample evidence to support the juvenile court's finding regarding Mother's knowledge of the abuse. We cannot overlook the great weight of evidence supporting the finding that Mother knew of the abuse merely because one witness testified that Mother was asleep during some of the father's abuse of E.S.B. The evidence included testimony that Mother knew that the father showered with E.S.B., that abuse occurred on camping trips, that the father was caught "smooching" with E.S.B., and that E.S.B. made an attempt to tell Mother about the abuse. In addition, Mother's argument that she may have been sleeping during some of the abuse incidents does not obviate Mother's repeated denial that abuse was occurring or her inability to protect her children from further abuse over the years, despite the numerous services provided *967 by DCFS, including those specifically designed for the purpose of preventing abuse. We conclude that the juvenile court's findings were supported by clear and convincing evidence.
¶ 15 Mother next challenges the juvenile court's findings that she failed to remedy the circumstances causing out-of-home placement of her children under Utah Code Ann. § 78-3a-407(4).[3] This section requires a finding that DCFS provided "appropriate services and the parent has substantially neglected, wilfully refused, or has been unable or unwilling to remedy the circumstances that cause[d] the child[ren] to be in an out-of-home placement." Id. It is clear from both the record and the juvenile court's findings that DCFS provided appropriate services.
¶ 16 Next, we must consider whether Mother "substantially neglected, wilfully refused, or has been unable or unwilling to remedy the circumstances that cause[d] the child[ren] to be in an out-of-home placement." Id.
¶ 17 In In re C.Y., 765 P.2d 251, 255 (Utah Ct.App.1988), this court determined that an effort to improve one's parenting skills is not determinative if "no significant improvement in [the parent's] parenting skills has been noted despite [the parent's] efforts." Here, Mother claims that she significantly complied with the service plan. However, mere compliance is not enough. The evidence presented at trial adequately supports the juvenile court's finding that after several years of involvement by DCFS, Mother failed to internalize what she has been taught relative to child care and child development. Further, the juvenile court found that Mother continued to reside in the home of the father, who had been the perpetrator of both physical and sexual abuse of the children. Additionally, Mother had no intention of separating from the father. The juvenile court also found that Mother continues to deny that any abuse occurred. Thus, there is ample evidence to support the juvenile court's findings pursuant to section 78-3a-407(4), and the juvenile court did not err.
¶ 18 Finally, Mother challenges the juvenile court's conclusion that termination of her parental rights was in the best interest of the children. Mother has continued to foster a relationship with the father and has no intention of leaving him, has continually denied the occurrence of any abuse, and has failed to internalize or implement any of the many services provided to her by DCFS. Given this evidence, the juvenile court was correct in determining it was in the children's best interest that Mother's parental rights be terminated.

II. Qualification of Expert Witness
¶ 19 Mother claims that because Ms. Collier was not a licensed psychologist, the juvenile court abused its discretion by admitting her testimony. Whether a witness qualifies as an expert is governed by Rule 702 of the Utah Rules of Evidence. When applying rule 702, Utah courts have noted that the "`critical factor in determining the competency of an expert is whether that expert has knowledge that can assist the trier of fact in resolving the issues before it.'" G.Y., 962 P.2d at 83 (quoting Wessel v. Erickson Landscaping Co., 711 P.2d 250, 253 (Utah 1985)). "Rule 702 only requires an expert to have knowledge, training, or education in the area." Robb v. Anderton, 863 P.2d 1322, 1326 (Utah Ct.App.1993).
¶ 20 During the trial, Ms. Collier testified that she had a master's degree in psychology, was a registered psychologist in Australia, and had practiced for eight years as a psychologist. Ms. Collier further testified that she had worked since 1997 as the primary therapist at the Trauma Treatment and Awareness Center in Utah. The focus of her employment involved working with children who were abused, neglected, abandoned, or *968 had other problems such as depression, disorders, or delinquency. After receiving this testimony, and having received no objection from counsel,[4] the juvenile court qualified Ms. Collier as an expert. Because Ms. Collier's licensure had no bearing on whether the court could properly qualify her as an expert witness, and the fact that her knowledge regarding this family could assist the juvenile court in resolving the issues before it, the juvenile court did not abuse its discretion by either qualifying her as an expert or by relying on her testimony. See id.
¶ 21 Therefore, we conclude that the juvenile court properly qualified Ms. Collier as an expert witness and did not err in admitting her testimony.

III. Application of Utah Code Ann. § 78-3a-409
¶ 22 Finally, Mother claims the juvenile court failed to consider the requirements set forth in Utah Code Ann. § 78-3a-409.
The statute requires courts, in determining whether parental rights should be terminated, to consider the reunification services offered; the children's physical, mental, and emotional condition and needs; and the parent's efforts to change conduct, conditions, or circumstances to make it in their children's best interest to return home.
In re S.T., 928 P.2d 393, 400 (Utah Ct.App. 1996). Although "the juvenile court did not expressly refer to the statute when considering these factors," it is clear from the detailed findings that the court did consider the requirements set forth in this section when making its final determination. Id. Therefore, we conclude that prior to terminating Mother's parental rights, "the juvenile court properly considered each statutory factor." Id.

CONCLUSION
¶ 23 We conclude that the there was sufficient evidence to support the juvenile court's termination of Mother's parental rights. In addition, the juvenile court properly qualified Ms. Collier as an expert witness and did not err in admitting her testimony. Finally, the juvenile court properly considered each statutory factor prior to terminating Mother's parental rights.
¶ 24 The juvenile court's order terminating Mother's parental rights is affirmed.
¶ 25 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge and PAMELA T. GREENWOOD, Judge.
NOTES
[1] For convenience, we cite to the most recent version of the statute. There has been no significant change to the statute that would affect our analysis.
[2] The father signed a petition to voluntarily relinquish his parental rights to three of the childrenL.B., E.B., B.B.on February 10, 2000. The petition was stayed until the termination of Mother's parental rights became effective on October 23, 2000.
[3] The State correctly points out in its brief that the juvenile court's findings inaccurately label the basis for the second ground under which Mother's parental rights were terminated as "failure of parental adjustment." Although failure of parental adjustment is a ground for termination enumerated in Utah Code Ann. § 78-3a-407(5) (Supp.2001), this ground was not relied upon by the juvenile court. Instead, the substance of the findings and conclusions support a determination under Utah Code Ann. § 78-3a-407(4) for failure to remedy circumstances causing out-of-home placement.
[4] Midway through trial, after Ms. Collier had been qualified as an expert, Mother's counsel raised the issue of licensure for the first time. The parties agreed to an investigation and that depending on the status of her licensure the defense would be permitted to file any motions with the court regarding the legal effect of non-licensure on expert status. After the investigation had been performed and the status of Ms. Collier's licensure was known, counsel for Mother did not pursue the issue. In addition, no memorandum or motion was filed. Because Mother did not pursue the issue and the juvenile court did not rule on it, that issue on appeal has been waived. See Hart v. Salt Lake County Comm'n, 945 P.2d 125, 130 (Utah Ct.App.1997).