147 P.3d 529 (2006)
2006 UT App 435
STATE of Utah, in the interest of T.M. and B.M., persons under eighteen years of age.
M.T.M., Appellant,
v.
State of Utah, Appellee.
No. 20060225-CA.
Court of Appeals of Utah.
October 19, 2006.
*530 Sharon S. Sipes, Law Offices of Sharon Sipes PC, Ogden, for Appellant.
Mark L. Shurtleff, Attorney General, and John M. Peterson, Assistant Attorney General, Salt Lake City, for Appellee.
Martha Pierce and Cynthia L. Havlicek, Salt Lake City, Guardians Ad Litem.
Before Judges BILLINGS, DAVIS, and THORNE.

OPINION
BILLINGS, Judge:
¶ 1 Appellant M.T.M. (Father) appeals the juvenile court's termination of his parental rights in T.M. and B.M. (collectively, the Children). On appeal, Father argues that the evidence was insufficient to support the juvenile court findings that Father is an unfit or incompetent parent and that it is in the Children's best interests that Father's parental rights are terminated. Father also contends the juvenile court erred in determining that the Division of Child and Family Services (DCFS) made reasonable reunification efforts. We affirm.

BACKGROUND
¶ 2 Father and K.M. (Mother) are the natural parents of the Children. Father and Mother married in October 1999, and Mother gave birth to T.M. in 2000 and B.M. in 2003.
¶ 3 On August 14, 2004, police arrested Mother for domestic violence assault in the presence of a child. Although Mother informed DCFS that the assault was an isolated incident, Mother and Father have a history of domestic violence in which they both participated. In a 1996 psychological evaluation, Mother reported that Father often abuses her, and the psychologist described Mother and Father's relationship as dysfunctional. On August 3, 2004, Father attempted to hang himself in the garage when he learned that Mother was seeing another man.
¶ 4 Both Mother and Father have used drugs. On August 18, 2004, Mother and Father submitted to drug tests in which they both tested positive for methamphetamine. As a result of Mother's and Father's drug use, the Children were exposed to methamphetamine and tests revealed that both T.M. and B.M. retained the drug or its metabolite in their bodies.
¶ 5 Consequently, in late August 2004, the State filed a petition alleging neglect or abuse of T.M. and B.M. and requesting custody of the Children. On September 30, 2004, the juvenile court found that Mother and Father had neglected and abused the Children. The court awarded Father temporary custody but required that DCFS provide protective supervision services, supervising all time Mother spends with the Children. Additionally, under the juvenile court order, the court required Mother and Father to complete a parenting course; undergo substance abuse and psychological evaluations and participate in any counseling recommended by those evaluations; remain drug and alcohol free; submit to random drug and alcohol tests; partake in domestic violence counseling; maintain stable housing and income; keep their homes appropriately clean; and maintain contact with DCFS, signing any necessary release forms and notifying DCFS of any changes in address or employment. The court scheduled a review of the matter for February 17, 2005.
¶ 6 On November 8, 2004, the State requested an early review because Mother and Father had violated the juvenile court's order that DCFS supervise all time that Mother *531 spends with the Children. Specifically, Father continued to regularly permit Mother to tend the Children while he was at work, despite warnings by DCFS that such exposure was prohibited. Mother admitted that during the time she cared for the Children she was using methamphetamine on a daily basis.
¶ 7 At a November 10, 2004 hearing, the juvenile court removed the Children from Father's custody. The court placed the Children in DCFS custody for foster placement and ordered Mother and Father to pay child support for the period the Children were not in Mother's or Father's custody. After losing temporary custody of the Children, Father relapsed and began using drugs again. The Children remain in foster care.
¶ 8 On February 17, 2005, at the court-scheduled review, the juvenile court ordered that Mother and Father have no contact with one another because they had continued to engage in acts of domestic violence. Over the following months,[1] the juvenile court periodically reviewed the matter and twice extended Father's reunification services because of his progress and adherence to the treatment plan. However, on October 20, 2005, the court terminated reunification services for both parents.
¶ 9 Several months later, on March 1, 2006, the juvenile court terminated Mother's and Father's parental rights on grounds that they are unfit or incompetent parents and that termination of parental rights is in the Children's best interests. Specifically concerning Father, the court found that although Father completed most of the treatment plan  albeit "a significant portion . . . only in the eleventh hour[,] . . . during the last two or three months"  and remained sober, he has been unable to quit his self-described "`addiction'" to Mother, and his "unwillingness to give up his ongoing relationship with . . . [M]other prevents him from being an adequate father and endangers the [C]hildren." The court described Father's specific acts of endangerment as allowing Mother to regularly care for the Children in violation of a court order and despite knowing Mother was using methamphetamine on a daily basis; continuing to engage in domestic violence with Mother; temporarily returning to drug use because of his relationship with Mother; "openly and blatantly" violating court orders, including protective orders; and seeking Mother's help over, and in rejection of, other family members' offers of assistance. Although the juvenile court acknowledged Father's testimony that if it "came down to a choice" between Mother and the Children, he would choose the Children, the court found that Father's actions  taken despite knowing "those decisions could place the [C]hildren at risk of further neglect, cause him to lose custody of his children, prevent him from regaining custody, or cause him to lose the[ Children] permanently"  demonstrated that Father had effectively prioritized his relationship with Mother over the protection of the Children.
¶ 10 Further, the juvenile court found the State had demonstrated sufficient grounds for termination of both Mother's and Father's rights because the parents had "neglected or abused the [C]hildren by engaging in domestic violence in the [C]hildren's presence [and] by exposing them to methamphetamine to the extent that the [C]hildren retained the drug or its metabolite in their bodies," see Utah Code Ann. § 78-3a-407(1)(b) (Supp.2006); "the parents' habitual use of controlled substances rendered them unable to properly care for the [C]hildren," see id. § 78-3a-408(2)(c) (Supp.2006); and "the [C]hildren were placed in custody of DCFS and the parents failed to substantially comply with the terms and conditions of the treatment plan within six months," see id. §§ 78-3a-407(1)(e),-408(5).
¶ 11 The juvenile court also found that termination of Mother's and Father's parental rights was in the Children's best interests on the basis that "DCFS made reasonable *532 efforts to provide proper services to reunify th[e C]hildren with either or both of their parents"; the Children have been in a stable, loving foster home and have developed close bonds with their foster parents, siblings, and extended family members; the foster parents desire to adopt the Children; despite the Children's bond with their natural parents and "the importance of blood relationships," "it is also important th[e Children] . . . be in a stable home[ ] and not . . . subject[ ] to the unpredictable environment they previously experienced in each of their natural parents' homes"; and Mother's irresponsibility and substance abuse are "overwhelming problems" that she has not fixed.
¶ 12 The specific evidence the court recited in support of its reasonable reunification efforts determination was that
the DCFS caseworker worked with the parents in formulating a detailed treatment plan, which was provided to each of them in writing; the treatment plan set forth exactly what services the parents would need to complete, and even provided the names, addresses, and telephone numbers of various agencies that would provide each service, along with specific time frames for completing certain steps of the process; the caseworker met with each of the parents often, providing them with reminders and encouragement of what needed to be done, as well as warning them of the consequences if they did not; the treatment plans were reviewed and renewed every six months; the caseworker set up and participated in family team meetings in order to better help the parents take advantage of available resources and stay motivated to complete their services; the caseworker set up a system for the parents to provide drug tests which had been ordered, and followed up on those tests; and the caseworker set up and coordinated visitation between the parents and the[ ][C]hildren.
¶ 13 Father appeals the termination of his parental rights in the Children.

ISSUES AND STANDARDS OF REVIEW
¶ 14 Father first argues that insufficient evidence exists to support the juvenile court's findings that he is an unfit or incompetent parent and that termination of his parental rights is in the Children's best interests. This court will overturn a juvenile court's factual findings in a parental rights termination proceeding only if the findings are clearly erroneous. See In re G.B., 2002 UT App 270, ¶ 9, 53 P.3d 963; see also In re Z.D., 2006 UT 54, ¶ 29, ___ P.3d ___, 2006 WL 2669947 (reiterating that Utah appellate courts generally must apply the "clearly erroneous" standard when reviewing sufficiency of evidence challenges to lower court findings). A court's findings are clearly erroneous "`if the findings are against the clear weight of the evidence, or if the appellate court is convinced that a mistake has been made.'" In re O.C., 2005 UT App 563, ¶ 16, 127 P.3d 1286 (quoting In re S.T., 928 P.2d 393, 398 (Utah Ct.App. 1996)); see also In re Z.D., 2006 UT 54 at ¶¶ 32, 40, ___ P.3d ___. We grant such deference to the juvenile court's findings because of its superior position to judge parties' and witnesses' "credibility and personalities," In re G.B, 2002 UT App 270 at ¶ 9, 53 P.3d 963; see also In re Z.D., 2006 UT 54 at ¶ 24, ___ P.3d ___, and because of "`juvenile court judges' special training, experience and interest in this field, and . . . devoted . . . attention to such matters.'" In re O.C., 2005 UT App 563 at ¶ 19, 127 P.3d 1286 (omissions in original) (quoting In re E.R., 2001 UT App 66, ¶ 11, 21 P.3d 680).
¶ 15 Father also argues that the trial court erroneously determined that DCFS made reasonable reunification efforts. "[T]he question of whether reasonable reunification efforts were made is a mixed question of law and fact." In re A.C., 2004 UT App 255, ¶ 9 n. 5, 97 P.3d 706. Thus, "we `review[ ] the juvenile court's factual findings for clear error and its conclusions of law for correctness, affording the court some discretion in applying the law to the facts.'" Id. at ¶ 9 (quoting In re M.C., 2003 UT App 429, ¶ 16, 82 P.3d 1159).

ANALYSIS
¶ 16 Under Utah law, a court may terminate an individual's parental rights if it concludes *533 that the party seeking termination has demonstrated by "clear and convincing evidence" that (1) the parent is unfit or incompetent and (2) termination is in the child's best interests. Utah Code Ann. § 78-3a-406(3) (Supp.2006). Additionally, in those cases where the court orders reunification services, the court must also conclude that DCFS made reasonable reunification efforts before the court can terminate parental rights. See id. § 78-3a-407(3)(a). Father asserts that there is insufficient evidence to support the juvenile court's findings that he is an unfit or incompetent parent and that termination of his parental rights is in the Children's best interests. Father also argues that the juvenile court erroneously concluded that DCFS made reasonable reunification efforts. We consider each claim in turn.

I. Parental Unfitness or Incompetence and Best Interests of the Children
¶ 17 Father argues that insufficient evidence exists to support the juvenile court findings that he is an unfit or incompetent parent and that termination of his parental rights is in the Children's best interests. In deciding whether sufficient grounds exist under Utah Code section 78-3a-407, see Utah Code Ann. § 78-3a-407(1)(c), to support a finding of parental unfitness or incompetence, it is appropriate for the juvenile court to "consider a parent's past conduct in determining what weight to give [to] present ability evidence." In re M.L., 965 P.2d 551, 561 (Utah Ct.App.1998). In doing so,
the weight which a juvenile court must give any present ability evidence is necessarily dependent on the amount of time during which the parent displayed an unwillingness or inability to improve his or her conduct and on any destructive effect the parent's past conduct or the parent's delay in rectifying the conduct has had on the parent's ability to resume a parent-child relationship with the child.
Id. In other words, as recently clarified by this court in In re B.R., 2006 UT App 354, 144 P.3d 231, the juvenile court "must . . . consider whether the magnitude of the past events, viewed in light of a parent's improvement efforts and other circumstances existing at the time of the termination trial, continues to place the parent below a threshold of fitness such that termination of his or her constitutional rights is permitted." Id. at ¶ 93. This determination must be based on the totality of the circumstances. See id. at ¶ 94.
¶ 18 Here, the juvenile court enumerated multiple grounds, relating to Father's present and past conduct, in support of its finding of unfitness. Concerning Father's past conduct, the court noted that (1) "[Father] neglected or abused the [C]hildren by engaging in domestic violence in the [C]hildren's presence" and "by exposing them to methamphetamine to the extent that the [C]hildren retained the drug or its metabolite in their own bodies," see Utah Code Ann. § 78-3a-407(1)(b); (2) Father was unfit or neglected the Children "in that . . . [his] habitual use of controlled substances rendered [him] unable to properly care for the [C]hildren," see id. §§ 78-3a-407(1)(b)-(c), -408(2)(c); and (3) the Children were placed in DCFS custody and "[Father] failed to substantially comply with the terms and conditions of [his] treatment plan within six months," see id. §§ 78-3a-407(1)(e),-408(5). With regard to Father's present conduct, the court explained that "[F]ather's unwillingness to give up his ongoing relationship with . . . [M]other prevents him from being an adequate father and endangers the [C]hildren," and that Father "has and will continue to choose his relationship with . . . [M]other over the [C]hildren." In considering Father's present and past conduct, the juvenile court determined that, despite Father's marked improvement efforts, the magnitude of Father's past conduct, viewed in light of present evidence indicating Father's persistent inability to protect the Children, "continues to place . . . [Father] below a threshold of fitness such that termination of his . . . constitutional rights is permitted." In re B.R., 2006 UT App 354 at ¶ 93, 144 P.3d 231.
¶ 19 We agree and stress that because Father's past conduct primarily involved Mother and occurred in the context of their relationship, his present and ongoing failure to detach himself from this relationship and *534 protect the Children from exposure to Mother is especially significant to the court's finding of unfitness.
¶ 20 Notably, Father does not refute, or even refer to, most of the above grounds relied on by the juvenile court to support its unfitness finding. Instead, Father focuses on evidence that Father violated court orders restricting all contact between Mother and Father and prohibiting Mother from spending time with the Children without DCFS supervision. He argues that contempt of court is insufficient evidence of parental unfitness or incompetency. However, Father mistakenly assumes that the juvenile court was concerned about his violations merely because they demonstrate a disdain for court orders. Rather, the juvenile court's concern was that Father's violations of these orders demonstrate his willingness to put the Children's safety at risk. Utah case law indicates that courts have minimal empathy for parents whose strong emotional ties to their spouses or significant others jeopardize their children's safety. See, e.g., In re J.F., 2006 UT App 18, 2006 WL 147602 (mem.) (affirming juvenile court's termination of mother's parental rights and stating that sufficient evidence in support of termination included that "[mother] did not comply with her safety plan precluding contact with the father and [that] she did not understand the danger to the children posed by contact with the father"); In re F.M., 2002 UT App 340, ¶ 3, 57 P.3d 1130 (explaining that mother's co-dependency issues with abusive father, her contact with father, and the fact that mother still lived in same trailer park as father, constituted sufficient evidence to support juvenile court's findings that mother could not protect the children); In re G.B., 2002 UT App 270, ¶ 8, 53 P.3d 963 (upholding juvenile court's finding that termination of mother's rights were in children's best interests where mother continued to foster a relationship with abusive father); In re A.B., 2002 UT App 38, 2002 WL 257629 (mem.) (concluding that sufficient evidence in support of juvenile court finding that termination was in child's best interest included evidence that "[m]other continued to foster a relationship with [her sexually abusive] boyfriend and tried to keep him involved in [the child's] life"). In sum, we conclude that the record reveals that the juvenile court's finding that Father is unfit or incompetent is not clearly erroneous and is supported by clear and convincing evidence.
¶ 21 Likewise, we also conclude that the record indicates sufficient evidence exists to support the juvenile court's finding that termination of Father's parental rights is in the Children's best interests. In adherence to Utah Code section 78-3a-406(3), "[i]f there are sufficient grounds to terminate parental rights, `the court must [then] find that the best interests and welfare of the child are served by terminating the parents' parental rights.'" In re K.B., 2006 UT App 247, 2006 WL 1646090 (per curiam) (alterations in original) (quoting In re R.A.J., 1999 UT App 329, ¶ 7, 991 P.2d 1118); see also Utah Code Ann. § 78-3a-406(3). Here, the juvenile court recited evidence both for and against its best interests determination  indicating the prudence and thoroughness with which the court evaluated the evidence and reached its final decision. Specifically, the court weighed evidence of Father's history of poor choices that negatively impacted the Children's lives, the stability and love the Children's foster home provided, and the Children's close bond with their foster family, against evidence of Father's efforts to complete his treatment plan, his commitment to provide for the Children, his employed and drug-free status, and the mutual love and bond between Father and the Children. We recognize the difficult task the juvenile court faced in weighing this evidence and determining that termination was in the Children's best interests. However, in concluding that the juvenile court's best interests finding is not clearly erroneous, see In re O.C., 2005 UT App 563, ¶ 16, 127 P.3d 1286, we reiterate that this court "must forebear disturbing the `close call,'" In re Z.D., 2006 UT 54, ¶ 33, ___ P.3d ___, and it is the juvenile court, with its training, expertise, and superior ability to assess the credibility of parties and witnesses, that is in the best position to make such a difficult determination, see In re E.R., 2001 UT App 66, ¶ 11, 21 P.3d 680.

II. Reasonable Reunification Efforts
¶ 22 Father also contends the juvenile court erred in concluding that DCFS made *535 reasonable reunification efforts. As noted, we give juvenile courts broad deference in determining whether reunification efforts were reasonable. See In re A.C., 2004 UT App 255, ¶ 12, 97 P.3d 706. This is because
the [juvenile] court is in the best position to evaluate the credibility and competence of those who testify regarding the services that were provided, the parent's level of participation in such services, whether the services were properly tailored to remedy the specific problems that led to removal of the child, and whether the parent successfully accessed and then utilized such services to remedy the problem necessitating the removal.
Id. That is, "determining whether or not DCFS has provided reasonable services to parents requires [juvenile court] judges to observe `facts[ ] . . . relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts.'" Id. (quoting State v. Pena, 869 P.2d 932, 939 (Utah 1994)) (omission and second alteration in original) (additional quotations and citation omitted).
¶ 23 Utah courts have held that DCFS "compl[ies] with its statutory obligation to make reasonable efforts toward reunification if it makes a fair and serious attempt to reunify a parent with a child prior to seeking to terminate parental rights." Id. at ¶ 14. Here, the juvenile court found that DCFS made
reasonable efforts to provide proper services to reunify the[ C]hildren with either or both of their parents[:] the DCFS caseworker worked with the parents in formulating a detailed treatment plan, which was provided to each of them in writing; the treatment plan set forth exactly what services the parents would need to complete, and even provided the names, addresses, and telephone numbers of various agencies that would provide each service, along with specific time frames for completing certain steps of the process; the caseworker met with each of the parents often, providing them with reminders and encouragement of what needed to be done, as well as warning them of the consequences if they did not; the treatment plans were reviewed and renewed every six months; the caseworker set up and participated in family team meetings in order to better help the parents take advantage of available resources and stay motivated to complete their services; the caseworker set up a system for the parents to provide drug tests which had been ordered, and followed up on those tests; and the caseworker set up and coordinated visitation between the parents and the[ ][C]hildren.
¶ 24 Father, maintains, however, that despite the court's findings, DCFS did not make a "fair and serious" reunification effort because it failed to provide Father with assistance in finding housing and daycare. Father further asserts that because of these failures, he had to turn to Mother for assistance and, as a result, lost custody of the Children.
¶ 25 We conclude the juvenile court did not erroneously determine that DCFS made fair and serious reunification efforts. See id. First, while the DCFS caseworker testified that he and Father discussed Father's financial difficulties regarding daycare, Father did not inform the caseworker that he was leaving the Children with Mother because he could not afford daycare and because he did not feel he had other options. Additionally, because approximately one month passed between the time the court issued its original order allowing Mother only DCFS supervised contact with the Children, and its order removing the Children from Father's temporary custody for permitting unsupervised contact, it was not unreasonable that DCFS had yet to fully resolve Father's daycare concerns  particularly when Father chose not to inform the caseworker that his failure to find daycare resulted in his leaving the Children with Mother. Further, Father's argument that DCFS, and its alleged failure to immediately address Father's financial concerns, is solely to blame for Father having to rely on Mother for daycare is undermined by the juvenile court's finding that Father "rejected help from other family members and instead turned to . . . [M]other for help."
¶ 26 Second, concerning Father's contention that he lost custody of the Children because of DCFS's failure to assist him in *536 finding housing, we point out that the juvenile court removed the Children from Father's custody because he was allowing Mother unsupervised time with the Children, not because he was unable to find stable housing. In fact, in its parental termination findings, the juvenile court states that "[b]oth parents have maintained stable housing."

CONCLUSION
¶ 27 We conclude that sufficient evidence exists to support the juvenile court's findings that Father is an unfit or incompetent parent and that termination of his parental rights is in the Children's best interests. We also conclude that the juvenile court did not erroneously determine that DCFS made reasonable reunification efforts. Accordingly, we affirm.
¶ 28 WE CONCUR: JAMES Z. DAVIS, Judge and WILLIAM A. THORNE JR., Judge.
NOTES
[1] Notably, in May 2005, Mother filed for a protective order against Father. The court dismissed the abuse hearing on grounds of no appearance by the parties. And in July 2005, both Mother and Father pleaded guilty to attempted endangerment of a child or elder adult. See Utah Code Ann. § 76-5-112.5 (2003). In October 2005, Father was convicted of disorderly conduct. See Utah Code Ann. § 76-9-102 (2003).