2006 UT App 457

**STATE of Utah, in the interest of A.M.D., a person under eighteen years of age.**

**A.M.W., Appellant,**

v.

**S.D., Appellee.**

No. 20060337–CA.

Court of Appeals of Utah.

Nov. 9, 2006.

Elizabeth A. Hruby–Mills, Michael K. Woolley, Richards Brandt Miller & Nelson, and Melissa A. Patten–Greene, Salt Lake City, for Appellant.

Sharon S. Sipes, Law Office of Sharon Sipes PC, Ogden, and James H. Woodall, South Jordan, for Appellee.

Martha Pierce and Brent J. Newton, Salt Lake City, Guardians Ad Litem.

Before Judges BENCH, BILLINGS, and DAVIS.

## OPINION

DAVIS, Judge:

¶ 1 A.M.W. (Mother) appeals the Third District Juvenile Court's (juvenile court) order terminating her parental rights in her daughter, A.M.D., a minor child. We affirm.

## BACKGROUND [1]

¶ 2 Mother and S.D. (Father) met in 1999 while attending a substance abuse program. The couple became romantically involved, and in August 2000, A.M.D. was born. Mother and Father raised A.M.D. together until they separated in 2002. At that time, the Third District Court (district court) awarded Mother and Father joint legal and physical custody of A.M.D.

¶ 3 In 2004, the district court modified its custody order and entered a decree of paternity awarding Father primary custody of A.M.D. Mother's visitation rights were subject to drug testing, as her substance abuse had become increasingly severe. Initially Mother complied with the drug testing requirements. However, when Father became

---

1. We rely on the juvenile court's findings of fact in our recitation of the background.

suspicious that Mother was tampering with the drug tests and requested observed urine testing, Mother refused to comply. Mother subsequently entered another substance abuse program, but relapsed into drug use soon after her discharge. Mother admitted that from February 2005 to July 2005 her "constant" abuse of methamphetamines, pills, and alcohol was "out of control." As a result of Mother's failure to comply with the paternity decree's drug testing requirements, she has not seen A.M.D. since January 2005.

¶ 4 On February 28, 2005, Father petitioned the juvenile court for termination of Mother's parental rights. This prompted Mother to enter a long-term, inpatient rehabilitation program, where she remained throughout the litigation. Mother moved to consolidate the juvenile court proceeding with the proceeding in the district court. Mother later moved the juvenile court to allow her expert, Dr. Debra Quackenbush, to conduct an updated evaluation of the relationship between A.M.D. and Mother. The juvenile court denied both motions, but stated in its order that Dr. Quackenbush would be permitted to testify at trial as to whether termination of Mother's parental rights would be in A.M.D.'s best interests.

¶ 5 At trial, Mother testified about her history of substance abuse, her emotional absence from A.M.D., her placing A.M.D. at physical risk, and the devastating effects these events have had on A.M.D. Mother also called Dr. Quackenbush as a witness, but the juvenile court prevented Dr. Quackenbush from testifying on the ultimate issue of whether termination was in A.M.D.'s best interests, and from answering certain hypothetical questions. However, the juvenile court did receive, through a letter admitted into evidence, expert opinion regarding the best interests of A.M.D. from Mother's second expert, Ms. Susan Mitchell.

¶ 6 The juvenile court permitted Father's expert, Ms. Terry Begay, to testify despite her inadvertent violation of a witness exclusionary order requested by Mother at the outset of trial. Ms. Begay testified on the ultimate issue and answered hypothetical questions. At the conclusion of trial, the juvenile court terminated Mother's parental rights. Mother appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 7 Mother first argues that the juvenile court erred by failing to communicate with the district court regarding that court's custody proceeding. She believes that rule 100 of the Utah Rules of Civil Procedure required communication between the two courts regarding consolidation of the two cases. *See* Utah R. Civ. P. 100. "[T]he interpretation of a rule of procedure is a question of law that we review for correctness." *Brown v. Glover*, 2000 UT 89, ¶ 15, 16 P.3d 540.

■ ¶ 8 Next, Mother asserts that the juvenile court erred in its rulings regarding her expert witness, Dr. Quackenbush. First, Mother claims the court's refusal to allow Dr. Quackenbush to testify on the ultimate issue—the best interests of A.M.D.—violated rule 704 of the Utah Rules of Evidence. *See* Utah R. Evid. 704(a). Second, Mother contends that the juvenile court wrongly denied Dr. Quackenbush the opportunity to answer hypothetical questions. In addition, Mother challenges the juvenile court's ruling precluding Dr. Quackenbush from conducting an updated assessment of the relationship between Mother and A.M.D. "[T]rial courts have wide discretion in determining the admissibility of expert testimony." *State v. Kelley*, 2000 UT 41, ¶ 11, 1 P.3d 546. Accordingly, "absent a clear abuse of this discretion, [we] will not reverse the trial court's determination." *Id.* We also review the juvenile court's order denying the updated assessment for abuse of discretion.

■ ¶ 9 Mother's third argument is that the juvenile court erred by permitting Father's expert, Ms. Begay, to testify despite her inadvertent violation of the witness exclusionary order. *See* Utah R. Evid. 615. "Whether and to what extent witnesses should be excluded is generally within the prerogative of the trial judge.... [The judge's] actions thereon should not be disturbed on appeal unless it clearly appears that he abused his discretion." *State v. Rangel*, 866 P.2d 607, 613 (Utah Ct.App.1993).

¶ 10 Finally, Mother urges that the combination of the alleged errors warrants reversal under the cumulative error doctrine. "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence ... that a fair trial was had." *State v. Kohl,* 2000 UT 35, ¶ 25, 999 P.2d 7 (quotations and citation omitted).

## ANALYSIS

¶ 11 The juvenile court terminated Mother's parental rights because it concluded that Father had demonstrated by "clear and convincing evidence" that Mother was unfit and termination was in A.M.D.'s best interests. Utah Code Ann. § 78–3a–406(3) (Supp.2004). Mother claims that the juvenile court erred in several of its rulings during the termination proceeding, each of which we discuss in turn.

### I. Utah Rule of Civil Procedure 100

¶ 12 Mother first asserts that rule 100 of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 100(b), required the juvenile court to communicate with the district court regarding the consolidation of the two proceedings. According to Mother, because the district court ruled on the custody issues and the juvenile court ruled on parental rights issues, rule 100 applied below. We disagree.

¶ 13 At the outset, we note that the juvenile court usually has exclusive jurisdiction over "the termination of the legal parent-child relationship." Utah Code Ann. § 78–3a–104(1)(g) (Supp.2006). *See also In re V.K.S.,* 2003 UT App 13, ¶ 22 n. 10, 63 P.3d 1284 ("The only exception to the juvenile court's exclusive jurisdiction to terminate parental rights 'provided by law,' appears to be provided in Utah Code Ann. § 78–30–4.16 (2002) regarding contested adoptions."). Because the instant case does not involve a contested adoption, the juvenile court had exclusive jurisdiction over the termination proceeding. Rule 100 does not require communication between two courts regarding consolidation when one court does not have proper jurisdiction.

¶ 14 In addition, the plain language of rule 100 indicates that the rule is inapplicable here. *See* Utah R. Civ. P. 100(b). Rule 100 states, in relevant part,

[t]he judge or commissioner assigned to a case in which child custody, child support[,] or parent time is an issue shall communicate and consult with any other judge or commissioner assigned to any other pending case involving the same issues and the same parties or their children. The objective of the communication is to consider the feasibility of consolidating the cases before one judge or commissioner or of coordinating hearings and orders.

*Id.* "In interpreting a statute or rule, we examine its plain language and resort to other methods ... only if the language is ambiguous." *Hartford Leasing Corp. v. State,* 888 P.2d 694, 701 (Utah Ct.App.1994) (quotations and citation omitted).

¶ 15 In order for rule 100 to require communication between the applicable courts there must be a "pending case involving the same issues and the same parties or their children." Utah R. Civ. P. 100(b). We must determine whether the paternity decree proceeding in the district court dealt with the same issues-child custody, child support, or parent time—as the parental termination proceeding in the juvenile court. We determine it did not.

¶ 16 The paternity proceeding in the district court dealt with child custody and parent time. Utah Code section 30–3–5 granted the district court jurisdiction over child custody, child support, and parent time. *See* Utah Code Ann. § 30–3–5(4)–(7) (Supp.2004). Similarly, the district court's paternity decree relies upon numerous other sections of Utah Code dealing specifically with child custody and parent time. *See id.* § 30–3–32 (Supp.2004) (governing parent time); *id.* § 30–3–33 (Supp.2004) (providing advisory guidelines for parent time arrangements); *id.* § 30–3–35.5 (Supp.2004) (governing schedule for parent time for children under five years of age).

¶ 17 On the other hand, the termination proceeding in the juvenile court did not deal with the "same issues" of child custody and parent time, and therefore rule 100 did not

apply. *See* Utah R. Civ. P. 100(b). The termination proceeding focused first on Mother's fitness as a parent, and second on the best interests of A.M.D. *See* Utah Code Ann. § 78–3a–402 (2002) (stating "if a parent is found ... to be unfit or incompetent ..., the court shall then consider the welfare and best interests of the child of paramount importance in determining whether termination of parental rights shall be ordered"); *see also id.* § 78–3a–407(1)(c) (Supp.2004) (allowing for termination of parental rights if parent is unfit); *id.* § 78–3a–408(2) (2002) (suggesting factors for consideration when determining fitness of a parent).

¶ 18 Therefore, the focus of the termination proceeding was on Mother's fitness as a parent and the best interests of A.M.D., as opposed to the paternity decree proceeding, which focused on the custody or parent time arrangements between Mother and Father. These are not the "same issues." Utah R. Civ. P. 100(b). Although the termination proceeding certainly affected Mother's parent time and custody, those issues were not before the juvenile court. As a result, the juvenile court had no duty under the plain language of rule 100(b) of the Utah Rules of Civil Procedure to communicate with the district court.[2] *See id.*

## II. Juvenile Court's Rulings Regarding Mother's Expert Witness

¶ 19 Mother asserts that the juvenile court erred in three of its rulings pertaining to her expert witness, Dr. Quackenbush. First, Mother claims that the juvenile court precluded Dr. Quackenbush from testifying as to the ultimate issue—the best interests of A.M.D.—in violation of rule 704 of the Utah Rules of Evidence. *See* Utah R. Evid.

704. While "testimony in the form of an opinion ... is not objectionable because it embraces an ultimate issue[,]" *id.*, it does not follow that such testimony is automatically admissible, *see* Utah R. Evid. 702; *Davidson v. Prince*, 813 P.2d 1225, 1232 n. 7 (Utah Ct.App.1991) (noting that not all ultimate issue opinions are admissible because the opinion must still "assist the trier of fact").

¶ 20 The admissibility of Dr. Quackenbush's ultimate issue testimony "fall[s] within the discretion of the trial court. Absent a clear abuse of discretion, we will not reverse the trial court's determination." *In re G.B.*, 2002 UT App 270, ¶ 10, 53 P.3d 963. Here, the juvenile court prevented Dr. Quackenbush from testifying because it did not believe her testimony would be helpful in determining whether termination was in A.M.D.'s best interests. *See* Utah R. Evid. 702. We agree. The parties stipulated to the bond between Mother and A.M.D. In addition, the juvenile court received expert opinion on the ultimate issue from another of Mother's expert witnesses, Ms. Mitchell. Thus, Dr. Quackenbush's testimony would have been cumulative. *See* Utah R. Evid. 403 (stating that relevant evidence "may be excluded" if cumulative). Therefore, the juvenile court did not abuse its discretion in precluding Mother's expert from testifying on the ultimate issue.[3]

¶ 21 Next, Mother argues that the juvenile court erred by preventing Dr. Quackenbush from answering hypothetical questions. While expert witnesses are permitted to answer hypothetical questions, *see Utah Dep't of Transp. v. 6200 S. Assocs.*, 872 P.2d 462, 468–69 (Utah Ct.App.1994), the admissibility of such testimony is left to the discretion of the trial court, *see In re G.B.*, 2002 UT App 270 at ¶ 10, 53 P.3d 963. The

**2.** Mother also argues that rule 100 of the Utah Rules of Civil Procedure required the juvenile court to provide notice to the parties of its communication with the district court regarding consolidating the two cases. *See* Utah R. Civ. P. 100(c). Because rule 100 is not applicable, no communication was required under rule 100(b) and neither was notice to the parties under rule 100(c). *See id.*

**3.** Mother also argues that the juvenile court's prevention of Dr. Quackenbush's testimony on

the ultimate issue was improper because it contradicted the court's prior order stating that such testimony would be admitted. However, the trial transcript clarifies that the juvenile court's prior order was meant only to permit Dr. Quackenbush to "testify[ ] in a general manner as to her feelings and her expertise in the area ... [b]ut not as to specifics in this case." Therefore, the juvenile court's ruling regarding Dr. Quackenbush's ultimate issue testimony was not contrary to its prior statements.

record indicates that the juvenile court permitted Dr. Quackenbush to answer numerous hypothetical questions, including what effect termination would have on a child of A.M.D.'s age. The court precluded responses to only two questions, which sought information that was irrelevant and too general. *See* Utah R. Evid. 401–403. Such rulings were well within the juvenile court's discretion.

¶ 22 Third, Mother claims that the juvenile court erred by precluding Dr. Quackenbush from conducting an updated evaluation of the relationship between Mother and A.M.D. prior to trial. We disagree. Because Father stipulated to the bond between Mother and A.M.D., testimony regarding their relationship would have been cumulative, making the updated assessment unnecessary to the juvenile court's determination of the best interests of A.M.D. *See id.* 403. Furthermore, an updated evaluation may actually have demonstrated that termination was in A.M.D.'s best interests because of the devastating effects of Mother's substance abuse on the parent-child relationship. We conclude that the juvenile court did not abuse its discretion by denying the updated evaluation.[4]

¶ 23 In sum, we hold that the juvenile court did not err in its rulings pertaining to Mother's expert, Dr. Quackenbush.

### III. Violation of Witness Exclusionary Order

¶ 24 Mother urges that the juvenile court erred by permitting Father's expert, Ms. Begay, to testify despite her inadvertent violation of the witness exclusionary order. Under rule 615 of the Utah Rules of Evidence, "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." Utah R. Evid. 615(1). "The trial

court's decision to exempt a witness from exclusion under rule 615 is reviewed for abuse of discretion, and if the challenged practice is not inherently prejudicial, or the [complaining party] fails to show actual prejudice, the judgment of the trial court will be affirmed." *State v. Billsie*, 2006 UT 13, ¶ 6, 131 P.3d 239 (quotations and citation omitted).

¶ 25 Unbeknownst to the juvenile court or the parties, Ms. Begay entered the courtroom and observed the testimony of Father's other expert witness, Ms. Anna Trupp, in violation of the exclusionary order. Nonetheless, the court allowed Ms. Begay to testify because it felt that such testimony would not be inappropriate. Under these facts and circumstances, we do not believe the juvenile court abused its discretion in exempting Ms. Begay from the exclusionary order. *See id.* Therefore, the juvenile court did not err in its ruling.[5]

### IV. Harmless Error

¶ 26 Even if the juvenile court did err in any of its rulings challenged on appeal, Mother has not shown or even argued that such rulings prejudiced her in any way. "[I]t is not enough to show error—[Mother] has the burden of establishing that [these errors] w[ere] prejudicial." *Utah Dep't of Transp. v. 6200 S. Assocs.*, 872 P.2d 462, 469 (Utah Ct.App.1994). Mother failed to demonstrate how an updated custody evaluation or additional testimony from Dr. Quackenbush would have changed the outcome of the termination proceeding. Nor has Mother shown how the refusal to enforce the exclusionary order against Ms. Begay caused her prejudice.

¶ 27 Thus, any individual errors allegedly committed by the juvenile court were harmless. "[H]armless error is an error that is

---

4. Although we determine that the juvenile court did not abuse its discretion in its rulings pertaining to Mother's expert, we underscore the importance of due process in termination of parental rights proceedings. Indeed, "the interest of parents in the care, custody, and control of their children[ ] is perhaps the oldest of the fundamental liberty interests recognized by this Court." *In re S.A.*, 2001 UT App 307, ¶ 12, 37 P.3d 1166. Trial courts should, where appropriate, provide

parents with every available opportunity to defend their parental rights.

5. Furthermore, because Mother has not demonstrated "actual prejudice" caused by the violation of the exclusionary order, we may affirm even if the juvenile court erred by permitting Ms. Begay to testify. *State v. Billsie*, 2006 UT 13, ¶ 6, 131 P.3d 239.

sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings." *State v. Evans*, 2001 UT 22, ¶ 20, 20 P.3d 888. There is ample evidence in the record supporting Mother's unfitness. Mother admitted that prior to entering her current rehabilitation program her abuse of methamphetamines, alcohol, and pills was "constant" and "out of control." The record also clearly indicates that termination was in A.M.D.'s best interests due to the devastating effects that Mother's substance abuse and physical and emotional absence had on A.M.D. As such, any errors committed by the juvenile court were harmless. *See id.*

### V. Cumulative Error

¶ 28 Lastly, Mother contends that the combination of the juvenile court's rulings discussed above constitutes cumulative error.

> Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence ... that a fair trial was had. If the claims are found on appeal to not constitute error, or the errors are found to be so minor as to result in no harm, the doctrine will not be applied.

*State v. Gonzales*, 2005 UT 72, ¶ 74, 125 P.3d 878 (quotations and citation omitted). Because none of Mother's claims constitute error, cumulative error does not apply.[6]

### CONCLUSION

¶ 29 The juvenile court did not violate rule 100 of the Utah Rules of Civil Procedure because the rule did not apply to the termination proceeding. *See* Utah R. Civ. P. 100. Neither did the court err in its rulings pertaining to Mother's expert witness. Finally, the court did not abuse its discretion by permitting Father's expert witness to testify despite her inadvertent violation of the exclusionary order. Because these rulings were not erroneous, the cumulative error doctrine

6. At oral argument, Mother's counsel conceded that the individual alleged errors were minor and not prejudicial and that Mother relies exclusively on cumulative error. However, Mother's cumulative error claim contains no analysis demon-

is inapplicable. As a result, we affirm the juvenile court's termination of Mother's parental rights in A.M.D.

¶ 30 Affirmed.

¶ 31 I CONCUR: RUSSELL W. BENCH, Presiding Judge.

¶ 32 I CONCUR IN THE RESULT: JUDITH M. BILLINGS, Judge.

strating "that there is a reasonable likelihood that in [the errors] absence there would have been a more favorable result for [Mother]." *State v. Burns*, 2000 UT 56, ¶ 35, 4 P.3d 795 (quotations and citations omitted).