**2019 UT App 174**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF L.M.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

A.M.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Opinion
No. 20190657-CA
Filed October 31, 2019

Third District Juvenile Court, Salt Lake Department
The Honorable Susan Eisenman
No. 1150593

Julie George, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

Before JUDGES GREGORY K. ORME, and MICHELE M. CHRISTIANSEN
FORSTER, and RYAN M. HARRIS.

PER CURIAM:

¶1 A.M. (Mother) appeals the juvenile court's order terminating her parental rights in her child, L.M. Mother's petition on appeal is unfocused and fails to actually state an issue for review, although it is clear that Mother disagrees with the juvenile court's order. Generously read, Mother challenges the finding that the Division of Child and Family Services (DCFS) provided reasonable reunification services and the sufficiency of the evidence supporting grounds for termination.

¶2    "Trial courts are in the best position to evaluate the credibility of witnesses, the parent's level of participation in reunification services, and whether services were appropriately tailored to remedy the problems that led to the child's removal." *In re K.F.*, 2009 UT 4, ¶ 52, 201 P.3d 985. Accordingly, "juvenile courts have broad discretion in determining whether reasonable reunification efforts were made." *Id.*

¶3    Here, reunification services began with a domestic violence assessment. The assessment concluded that Mother was in "extreme danger" from Father "and recommended ten sessions of domestic violence victim treatment." DCFS referred Mother for this treatment, as recommended by the assessment, but it took Mother five months to complete the classes because she "frequently" missed them. DCFS also brought in its domestic violence specialist to consult on the case. The specialist was involved throughout the case, "participated in team meetings and provided additional support and resources for [Mother] as a victim of domestic violence." After Mother completed the domestic violence treatment program, DCFS referred her to individual therapy.

¶4    Based upon the record before us, we cannot say that the juvenile court abused its discretion in finding that DCFS provided reasonable reunification services to Mother. The services were tailored to remedy the issues that led to Child's removal and give Mother the opportunity to address the domestic violence issues in this case. First, to the extent that "more intensive services" may have been helpful to Mother, Mother's own dishonesty regarding her ongoing involvement with Father prevented DCFS from recognizing any arguable need for additional services during the reunification period. In any event, the domestic violence services provided to Mother were extensive and included a domestic violence assessment, a domestic violence course, individual therapy, and the ongoing services of a domestic violence specialist. These services were "at

the level suggested by the experts" who conducted Mother's domestic violence assessment and were clearly aimed at alleviating "the myriad psychological, social, and economic constraints that undermine abused women's efforts to leave their abusers and protect their children from exposure to domestic violence." *See In re C.C.*, 2017 UT App 134, ¶ 47, 402 P.3d 17 (Christiansen, J., concurring). That Mother did not succeed in breaking free from an abusive relationship is unfortunate, but cannot reasonably be attributed to a lack of appropriate services.

¶5 Mother next asserts that the evidence was insufficient to establish grounds for termination. Whether a parent's rights should be terminated is a mixed question of law and fact. *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. The ultimate conclusion that a parent is unfit or that other grounds for termination have been established is a legal question, "but such decisions rely heavily on the juvenile court's assessment and weighing of the facts in any given case." *Id.* Because of the factually intense nature of parental termination proceedings, "the juvenile court's decision should be afforded a high degree of deference." *Id.* Accordingly, to overturn a juvenile court's decision, the decision must be "against the clear weight of the evidence." *Id.* "When a foundation for the [juvenile] court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id.*

¶6 The juvenile court found multiple grounds for termination of Mother's parental rights. *See* Utah Code § 78A-6-507(1) (LexisNexis 2018) (listing grounds for termination of parental rights). A finding of any single ground is sufficient to support termination of parental rights. *Id.* Among the grounds found by the juvenile court was that Mother had failed to remedy the circumstances leading to the removal of Child. *Id.* § 78A-6-507(1)(d). The juvenile court may terminate a parent's rights if it finds

that the child is being cared for in an out-of-home placement under the supervision of the court or the [DCFS]; that the parent has substantially neglected, willfully refused, or has been unable or unwilling to remedy the circumstances that cause the child to be in an out-of-home placement; and that there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care in the near future. *Id.*

¶7    Here, the evidence was sufficient to support the juvenile court's determination that Mother had failed to remedy the circumstances leading to Child's removal. Mother lost custody of Child primarily due to domestic violence concerns and Child was in a DCFS supervised placement. Although Mother completed a domestic violence class of ten sessions over several months and had access to a domestic violence specialist as a further resource, Mother did not successfully address the pattern of domestic violence with Father.

¶8    A parent who maintains a relationship with an abusive partner jeopardizes a child's safety. *See In re C.C.W.*, 2019 UT App 34, ¶ 20, 440 P.3d 749 ("[A] parent's acts of domestic violence [towards another parent] can have adverse impacts on a child, even if that child is not the direct object of such violence, and even if the child does not directly witness the violence."). As such, the continuation of an abusive relationship can therefore be a factor supporting termination of parental rights. *In re T.M.*, 2006 UT App 435, ¶ 20, 147 P.3d 529. While extricating oneself from an abusive relationship can pose an extremely difficult hurdle for victims of domestic abuse, if a parent does not successfully leave the relationship, the juvenile court may find that the parent has failed to remedy the circumstances that led to a child's removal.

¶9   It has been observed that Utah law has not always accounted for the difficulty faced by domestic violence victims in these circumstances, often blaming victims for the abuse they have suffered without acknowledging that adequate resources may not have been offered to a victim to enable that victim to address the problem. *In re C.C.*, 2017 UT App 134, ¶¶ 46–48, 402 P.3d 17 (Christiansen, J., concurring). However, that is not the case here. As discussed above, DCFS provided extensive services to Mother specifically aimed at helping her to break out of the cycle of domestic violence. But, despite these services, Mother was unable to remedy the circumstances that led to Child's removal.

¶10   Over the course of more than one year of reunification services, Mother deceived DCFS regarding her contact and status with Father, even as she was participating in the domestic violence classes. At times, Mother reported that Father was abusive, and asserted that he kidnapped her at one point during the case. She denied having contact with Father and said she was done with him. On the other hand, Mother told her psychological evaluator that Father had not hurt her and denied ever reporting that he did.

¶11   At other times, Mother acknowledged that the relationship was ongoing and at one point requested couples therapy. She said that she and Father had not actually separated and intended to stay together. Mother even brought Father to visits with Child although Father did not have visitation rights. When Mother was close to having Child for an extended unsupervised visit, she brought Father with her and lied about his identity to her caseworker, knowing that contact with Father was not allowed. Based on Mother's continued contact with Father and her deception, the juvenile court concluded that Mother had not internalized the lessons from the domestic violence therapy and still presented a risk to Child because she

could not protect Child from the abusive situation posed by Father.

¶12    Additionally, the same evidence supports that there was a substantial likelihood that Mother would not be able to exercise proper and effective parental care in the near future. After a year of services, Mother had not progressed in her ability to protect Child from harm. And Mother's lack of credibility resulted in little weight being given to her assertions at trial that she had severed her ties with Father. The concerns for Child's safety remained the same and Mother would require substantially more time to demonstrate that she would be able to protect Child. In sum, the evidence supported the juvenile court's finding of grounds for termination pursuant to Utah Code section 78A-6-507(1)(d).

¶13    Affirmed.

———