2008 UT App 88

**STATE of Utah, in the interest of V.L. and P.L., persons under eighteen years of age.**

**A.B., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20070408–CA.**

Court of Appeals of Utah.

March 13, 2008.

---

---

Sophia J. Moore, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and John M. Peterson, asst. atty. gen., Salt Lake City, for Appellee.

Martha Pierce, Salt Lake City, Guardian Ad Litem.

Before Judges BILLINGS, McHUGH, and ORME.

## OPINION

BILLINGS, Judge:

¶ 1 Appellant A.B. appeals the juvenile court's termination of his parental rights in V.L. and P.L. We affirm.

## BACKGROUND

¶ 2 This appeal stems from the termination of parental rights in four children: Z.L., A.L., V.L., and P.L. K.L. (Mother) is the biological mother of all four children. D.L. (Husband) is the biological father of the two oldest children: Z.L. and A.L. A.B. (Father) is the biological father of the two youngest children: V.L. and P.L. The juvenile court entered a termination order terminating the parental rights of all three parents on May 10, 2007 (the Termination Order), and all three parents have filed separate appeals regarding the Termination Order. This case addresses only the termination of Father's parental rights in V.L. and P.L.

¶ 3 Husband and Mother were married on September 28, 1996. The court presumed Husband was the biological father of all four children since Z.L. (the oldest child) was born just prior to Mother and Husband's marriage and the other three children were born during the course of Mother and Husband's marriage.

¶ 4 In early January 2005, Mother was hospitalized for the birth of P.L. On January 8, 2005, Husband, who was then separated from Mother, was arrested after demanding that the hospital staff tell him Mother's location and status. Ten days later, the Division of Child and Family Services (DCFS) learned that P.L. tested positive for methamphetamine. On January 20, 2005, Mother also tested positive for methamphetamine. Both Husband and Mother admitted these facts, as well as allegations that they had engaged in domestic violence witnessed by the four children. Rather than taking custody of the children following the initial posi-

tive drug-test results, the juvenile court ordered the children to remain in Mother's custody. At a March 16, 2005 hearing, Husband requested visitation with the children. Mother objected to this request and asserted that Husband was not entitled to visitation because Father, not Husband, is the actual biological father of at least two of the children. The juvenile court responded by ordering that Father submit to DNA testing. The juvenile court also adopted a service plan for both Mother and Husband during this hearing. Specifically, the court ordered both parents to participate in drug testing, maintain legal income, obtain a domestic violence assessment and follow the recommendations, and participate in counseling and parenting classes.

¶ 5 The following month, both Mother and Husband moved and DCFS caseworkers were unable to locate them until mid-June, 2005. During the termination trial, Husband admitted that the family was "hiding" from caseworkers.

¶ 6 After DCFS located Mother and Husband, they appeared at a review hearing on June 22, 2005. Again, the juvenile court did not take the children into custody, but ordered Mother and Husband to meet with a DCFS caseworker within twenty-four hours and submit to drug testing. Both Mother and Husband claimed that they could not comply with drug testing because neither of them had the proper identification. They also failed to submit to drug testing the following month, even though a caseworker arranged to identify both parties by phone. Additionally, the juvenile court learned that Mother and Husband had again been involved in domestic violence after the June 22, 2005 hearing.

¶ 7 Based on Mother's and Husband's conduct, the juvenile court held a review hearing in July 2005, found that emergency circumstances existed, and transferred custody and guardianship of the children to DCFS. At this hearing, Father filed his Acknowledgment of Paternity as to V.L. and P.L. At that time, the juvenile court again ordered Father to contact the Office of Recovery Services

(ORS) to arrange paternity testing with respect to V.L. and P.L.

¶ 8 On November 16, 2005, a hearing was held pertaining to Father since his paternity test indicated that Father is the biological father of V.L. and P.L. The court ordered that conflict counsel be appointed to Father. The court also indicated that DCFS was to set up visitation for Father as to V.L. and P.L. On November 22, 2005, counsel was appointed to represent Father in the termination proceedings.

¶ 9 At a hearing on January 25, 2006, Father's counsel moved the juvenile court for unsupervised visitation. The juvenile court denied this motion. Father's counsel did not make any requests for services or for custody at this or any other time.

¶ 10 On March 22, 2006, the State filed the Termination Petition at issue in this appeal, alleging that (1) Father made only token efforts to support or communicate with V.L. and P.L., and to eliminate the risk of serious physical, mental, or emotional abuse of V.L. and P.L.; (2) Father was unfit or incompetent to care for V.L. and P.L.; (3) Father failed to show the normal interest of a parent without just cause; and (4) Father made only token efforts to support or communicate with V.L. and P.L., to prevent neglect of V.L. and P.L., and to avoid being an unfit parent.

¶ 11 The trial on the Termination Petition was scheduled for June. However, the parties filed several continuances, which the juvenile court granted. The trial on the Termination Petition in this matter spanned multiple days. The first half of the trial occurred during Father's first counsel's representation. However, in January 2007, Father was appointed new trial counsel. At the trial held on January 16, 2007, Father's new counsel advised the court that she had done her best to prepare for trial, but that she needed additional time to prepare and requested a continuance. Both Mother and the Guardian ad Litem opposed the motion, arguing that it was not in the best interest of the children and that all other parties were prepared to go forward. The juvenile court denied Father's motion.

¶ 12 At the close of the trial on the Termination Petition, the juvenile court entered the following findings with respect to Father:

32. The testimony of [Father] lacked credibility. His answers were inconsistent and self-serving.

33. [Father] was aware that he was the father of [V.L. and P.L.] from the time [Mother] became pregnant with each of them.

34. [Father] did not sign either of their birth certificates or take [any] action to establish his paternity of these children.

35. [Father] did not tell [Husband] that he was the father of [V.L. and P.L.]. Instead, he allowed [Husband] to raise V.L. as his own child for the first two years of V.L.'s life. [Father] did not provide support for V.L. during the time he was being raised by [Husband].

36. [Mother] lived with [Father] off and on during 2005. [Father] was aware that there were incidents of domestic violence between [Husband] and [Mother]. He was aware that V.L. was being raised in that environment, yet he took no action to protect V.L. or prevent his exposure to domestic violence.

37. [Father] and [Mother] both signed a lease on [Mother's] home on October 20, 2005. The lease identifies the occupants of the home as two adults and four children. [Father] initially testified that he did not sign the lease. When confronted with a signed copy, he then testified that he had his name removed from the lease. [Father] and [Mother] were both served with eviction papers in June 2006 for nonpayment of rent.

38. According to ... [M]other's testimony, [Father] spent the night at her home approximately twenty times since October of 2005. He provided money to ... [M]other to pay the back rent on at least two occasions. In June 2006, [Father] paid approximately $1,500 in past due rent on the residence. He also kept his coat, a

video game system, and cars at ... [M]other's residence. He performed work on cars for his business at ... [M]other's residence.

39. [The juvenile c]ourt previously advised [Father], during the course of this action, that his continued relationship with ... [M]other could negatively impact his ability to obtain custody of his children.

40. Even though [Father] denies an ongoing relationship with ... [M]other, he has continued to keep personal items at her residence, he runs part of his business from her home, he continues to assist her with rent, and he has spent multiple nights at her residence. In addition, he went to a Halloween party in 2006 at Z.L. and A.L.'s school with ... [M]other in knowing violation of [the juvenile c]ourt's orders that they were only to have supervised visitation with the children.

41. Based on [Father]'s history, [the juvenile c]ourt has no confidence that [Father] would protect the children from ... [M]other.

42. [Father] has not paid any child support for the benefit of his children. At the time the trial started in September 2006, [Father] owed past due child support of $5,174.24 to [ORS]. [Father] had the ability to make child support payments. He testified that he earns approximately $2,000 to $4,000 per month.

From these findings, the juvenile court concluded that Father is an unfit parent based on his "unwillingness to end his relationship with ... [M]other, who has been determined to be an unfit parent, and the [juvenile c]ourt's conclusion that [Father] would be unwilling to prevent contact between ... [M]other and the children." The juvenile court additionally concluded that Father had abandoned V.L. in that he "failed to show the normal interest of a natural parent without just cause." On May 10, 2007, the juvenile court entered the Termination Order terminating Father's parental rights in V.L. and P.L. Father now appeals the termination of his parental rights in his children V.L. and P.L.

## ISSUES AND STANDARDS OF REVIEW

¶ 13 Father argues that insufficient evidence exists to support the juvenile court findings that (1) he abandoned V.L. and P.L. and (2) he is an unfit or incompetent parent. We will only overturn a juvenile court's factual findings in a parental rights termination proceeding if the findings are clearly erroneous. *See In re G.B.*, 2002 UT App 270, ¶ 9, 53 P.3d 963. We grant broad deference to the juvenile court's findings because of its superior position to judge parties' and witnesses' "credibility and personalities," *id.*, and because of " 'juvenile court judges' special training, experience and interest in this field, and ... devoted ... attention to such matters,' " *In re O.C.*, 2005 UT App 563, ¶ 19, 127 P.3d 1286 (alterations in original) (quoting *In re E.R.*, 2001 UT App 66, ¶ 11, 21 P.3d 680).

¶ 14 Father next argues that the juvenile court applied an incorrect standard to determine Father's paternity of V.L. and P.L. However, this issue was not raised below, and we will not address an issue raised for the first time on appeal. *See State v. Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551 ("Under ordinary circumstances, we will not consider an issue brought for the first time on appeal unless the trial court committed plain error or exceptional circumstances exist." (internal quotation marks omitted)).

¶ 15 Father further contends that the juvenile court abused its discretion when it denied Father's request for a continuance based on the ground that he was appointed new counsel two weeks prior to the motion and during the termination trial. The juvenile court has substantial discretion in deciding whether to grant or deny a request for a continuance, and that discretion will not be disturbed unless that discretion has clearly been abused. *See Brown v. Glover*, 2000 UT 89, ¶ 43, 16 P.3d 540.

¶ 16 Finally, Father asserts that he received ineffective assistance of counsel because Father's counsel failed to file a petition for custody of V.L. and P.L. on Father's

behalf. This court reviews ineffective assistance of counsel claims raised for the first time on appeal as a matter of law. *See State v. Maestas*, 1999 UT 32, ¶ 20, 984 P.2d 376. To establish ineffective assistance of counsel, the defendant must show that trial counsel "rendered deficient performance [that] fell below an objective standard of reasonable professional judgment and that counsel's ... performance prejudiced [the defendant]." *Id.* (internal quotation marks omitted).

## ANALYSIS

### I. Termination Based on Abandonment

¶ 17 Father first argues that there was insufficient evidence to support the termination of his parental rights based on abandonment. Under Utah law, "it is prima facie evidence of abandonment that the parent ... failed to communicate with the child[ren] by mail, telephone, or otherwise for six months; [or] ... failed to have shown the normal interest of a natural parent, without just cause." Utah Code Ann. § 78–3a–408(1)(b), (c) (Supp.2007). The burden then shifts to the parent to rebut the abandonment presumption. *See In re M.S.*, 815 P.2d 1325, 1329 (Utah Ct.App.1991).

¶ 18 The primary focus of Father's argument is that he rectified any alleged prior abandonment. Father relies on this court's opinion in *In re B.R.*, 2006 UT App 354, 144 P.3d 231, *vacated*, 2007 UT 82, 171 P.3d 435. In *In re B.R.*, this court determined to reinstate a mother's parental rights because, "despite her previous substantial shortcomings [as a parent], [she] managed to accomplish substantial rehabilitation between the permanency hearing and the time of the termination trial." *Id.* ¶ 130. We held that "[i]n light of the continuing vitality of the parent-child relationship, ... [the m]other's previous drug use and other prior failings [did] not outweigh the evidence of [her] present parenting ability." *Id.* We further held that in a termination proceeding,

> [t]he weight which a juvenile court must give any present ability evidence is necessarily dependent on the amount of time during which the parent displayed an unwillingness or inability to improve his or

her conduct and on any destructive effect the parent's past conduct or the parent's delay in rectifying the conduct has had on the parent's ability to resume a parent-child relationship with the child.

*Id.* ¶ 25 (internal quotation marks omitted). Father argues that any abandonment that occurred during the first two years of V.L.'s life was cured because V.L. has no memory of that time and because Father has now formed a strong bond with V.L.

¶ 19 However, we conclude that Father's reliance on *In re B.R.* is misplaced for two reasons. First, our opinion in *In re B.R.* notes that the ground of abandonment may be so "grave" that the resulting inference of unfitness is practically "unsurmountable." *Id.* ¶ 95 n. 26. Second, and more importantly, the Utah Supreme Court has recently reviewed and reversed our decision in *In re B.R.*, *see In re B.R.*, 2007 UT 82, ¶ 1, 171 P.3d 435. The supreme court noted that a juvenile court "must weigh a parent's past conduct with [his] present abilities," *id.* ¶ 13, and further noted that the juvenile court is required to consider the totality of the evidence, *see id.* The supreme court reversed our decision stating that the juvenile court actually "did weigh all of the appropriate evidence." *Id.* The court also stated that this court inappropriately "gave more emphasis to [the mother's] recent efforts than the juvenile court did" and erred by substituting its judgment for that of the juvenile court. *See id.* ¶ 14.

¶ 20 In this case, the juvenile court had the opportunity to evaluate all of the evidence, including evidence that Father has bonded with his children and taken all necessary steps to establish his paternity since the termination proceedings began. In evaluating this evidence, the juvenile court found that the testimonies of Mother and Father "lacked credibility," were "inconsistent," and "self-serving." The record also established that Father knew that he was the biological father of V.L., he knew that V.L. and P.L. both bore Husband's surname, he did not seek to establish his paternity until the day he came to court when V.L. was two years old, and he did not sign either V.L.'s or P.L.'s birth certificate. The record also

shows that Husband took responsibility for being a father to V.L. and that V.L. considered Husband to be his father, even though he knew who his "real" father was, and that Mother never encouraged Father to establish paternity. Finally, the record establishes that Husband did not know that he was not V.L.'s father until paternity results were in, that he considered V.L. to be his son, and that neither Mother nor Father told him that he was not the father of V.L. and P.L.

¶ 21 Given the supreme court's recent opinion in *In re B.R.* regarding the juvenile court's broad discretion to evaluate the totality of the evidence regarding both the parent's past behavior and present circumstances, we conclude that the juvenile court was within its discretion to determine that Father abandoned his children. The juvenile court acted within its role in discounting and discrediting the testimony of Mother and Father, making appropriate inferences from the record, and finding that credible evidence supports Father's abandonment of V.L. and P.L.

## II. Termination Based on Unfitness

■ ¶ 22 Next, Father argues that there is insufficient evidence to support the juvenile court's finding that he is an unfit parent because he knowingly permitted his children to be abused and neglected.[1] Under Utah law, a court may terminate an individual's parental rights if it concludes that the party seeking termination has demonstrated by "clear and convincing evidence" that the parent is "unfit or incompetent." *See* Utah Code Ann. § 78–3a–406(3) (Supp.2007). In this case, the court decided that Father is an unfit parent because he is "unwilling [ ] to end his relationship with [M]other, who has been determined to be an unfit parent, and the [c]ourt's conclusion that ... Father would be unable or unwilling to prevent contact between [M]other and the children."

¶ 23 In *In re T.M.*, 2006 UT App 435, 147 P.3d 529, this court determined that a father's unwillingness to sever his relationship

with the children's mother, who was an unfit and incompetent parent, was sufficient to support the termination of the father's parental rights in the children. *See id.* ¶ 19. In this case, the evidence indicates that Father was maintaining a relationship with Mother: Father and Mother came to visits together, Father's name was on the lease of Mother's residence, and Father continued to spend time at Mother's home. Moreover, the juvenile court found that Father keeps personal property at Mother's residence, runs part of his business from Mother's residence, assisted with the rent at least until June 2006, spent multiple nights at her residence, and visited the children's school with Mother when they were not even supposed to know where the children went to school. The juvenile court further determined that Father knew about episodes of domestic violence between Mother and Husband, and yet he failed to take any steps to prevent the children from remaining in that environment. Such evidence supports the juvenile court's finding of Father's unfitness, especially when the juvenile court determined that Mother's and Father's contrary testimonies lacked credibility. Therefore, we conclude that there was sufficient evidence to support termination of Father's parental rights based on unfitness.

## III. Standards and Procedures for Determining Father's Paternity

■ ¶ 24 Next, Father argues that the juvenile court erred in the standards and procedures it used to determine his paternity of V.L. and P.L. However, Father did not raise this issue below and is thus precluded from raising it for the first time on appeal. *See State v. Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551. Therefore, we do not address this issue.

## IV. Denial of Motion for a Continuance

■ ¶ 25 Father further argues that the juvenile court abused its discretion in deny-

---

1. Although Utah law requires only one ground for termination of parental rights, *see* Utah Code Ann. § 78–3a–407(1) (Supp.2007), we nevertheless address Father's challenge to the juvenile

court's second ground for termination of his parental rights—unfitness—for the guidance it may offer in future cases.

ing his motion for a continuance. During the course of the termination proceedings, just two weeks before trial on the Termination Petition, the juvenile court appointed Father new trial counsel. Father's new trial counsel requested a continuance on grounds that she did not have adequate time to prepare, that Father's change in counsel was beyond his control, and that Father was attempting to obtain further material evidence.

¶ 26 Although the Utah Supreme Court has indicated that a failure to grant a continuance of a trial date may be enough to constitute an abuse of discretion under some circumstances, it has also provided the trial court's substantial discretion in deciding whether to grant a continuance. *See Brown v. Glover*, 2000 UT 89, ¶ 43, 16 P.3d 540. Father has failed to demonstrate with any specificity how the denial of his motion for a continuance prejudiced him at trial and how the juvenile court thus abused its discretion. Instead, Father simply makes broad allegations, such as his new counsel "was precluded from making timely objections or giving necessary notice" or that he was attempting to obtain new evidence, which has little to do with the appointment of his new counsel. These allegations of prejudice are too vague to be persuasive.

¶ 27 Moreover, the termination proceedings were under way, and the other parties would have been significantly inconvenienced by any further delay. In fact, Mother objected to Father's motion for a continuance. Given the juvenile court's broad discretion in determining whether to grant or deny a motion for a continuance and Father's failure to demonstrate actual prejudice, we conclude that the juvenile court did not abuse its discretion in denying Father's motion for a continuance.

### V. Ineffective Assistance of Counsel

¶ 28 Father finally contends that he received ineffective assistance of counsel because his trial counsel failed to petition for custody of V.L. and P.L. on his behalf. To prevail on a claim of ineffective assistance of counsel, Father must show that (1) his counsel's performance was objectively deficient and (2) he was actually prejudiced by the deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 688–89, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Menzies v. Galetka*, 2006 UT 81, ¶ 87, 150 P.3d 480.

¶ 29 It is clear from the record that Father suffered no prejudice by his trial counsel's failure to petition for custody of V.L. and P.L. On January 25, 2006, Father's trial counsel requested unsupervised visitation between Father and his children based on Father's stable residence, stable job history, and lack of drug use. The juvenile court denied his request. We conclude that if the juvenile court denied Father's petition for unsupervised visitation, it would have likely also denied his petition for custody. Therefore, Father was not prejudiced by his trial counsel's failure to petition for custody of V.L. and P.L. on his behalf. Accordingly, Father's claim for ineffective assistance of counsel fails.

### CONCLUSION

¶ 30 We conclude that sufficient evidence exists to support the juvenile court's findings that Father abandoned his children and also that Father is an unfit parent. We also conclude that the juvenile court did not abuse its discretion in denying Father's motion to continue and that Father did not receive ineffective assistance of counsel. Accordingly, we affirm.

¶ 31 WE CONCUR: CAROLYN B. McHUGH and GREGORY K. ORME, Judges.