**2016 UT App 103**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF S.L., W.T., AND P.T.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

R.T.,
Appellant
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Decision
No. 20160133-CA
Filed May 19, 2016

Third District Juvenile Court, West Jordan Department
The Honorable Renee M. Jimenez
No. 1104100

Harini Venkatesan, Attorney for Appellant

Sean D. Reyes and Carol L.C. Verdoia, Attorneys
for Appellee

Martha Pierce, Guardian ad Litem

Before JUDGES STEPHEN L. ROTH, MICHELE M. CHRISTIANSEN, and
KATE A. TOOMEY.

PER CURIAM:

¶1      R.T. (Mother) appeals the termination of her parental rights. We affirm.

¶2      "[I]n order to overturn the juvenile court's decision [to terminate a person's parental rights,] 'the result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made.'" *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (citation omitted). We "review the juvenile court's factual findings based upon the

clearly erroneous standard." *In re E.R.*, 2001 UT App 66, ¶ 11, 21 P.3d 680. A finding of fact is clearly erroneous only when, in light of the evidence supporting the finding, it is against the clear weight of the evidence. *See id.* Further, we give the juvenile court a "wide latitude of discretion as to the judgments arrived at based upon not only the court's opportunity to judge credibility firsthand, but also based on the juvenile court judges' special training, experience and interest in this field." *Id.* (citation and internal quotation marks omitted). Finally, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶ 12.

¶3      Mother asserts that the juvenile court erred in determining that there was sufficient evidence to support its conclusion that Mother was an unfit or incompetent parent. However, the juvenile court found multiple other grounds for termination under Utah Code section 78A-6-607, including neglect, failure to remedy the circumstances leading to the children's out-of-home placement, failure of parental adjustment, and that Mother made only token efforts to support the children and prevent neglect. *See* Utah Code Ann. § 78A-6-507(1)(b), (d), (e), (f) (LexisNexis 2012). Pursuant to section 78A-6-507(1), the finding of any single ground is sufficient to warrant termination of parental rights. *See id.* § 78A-6-507(1) (providing that the court may terminate all parental rights if it finds any of the grounds listed); *In re F.C.*, 2003 UT App 397, ¶ 6, 81 P.3d 790 (noting any single ground is sufficient to terminate parental rights). Mother does not challenge any of these other grounds for termination. Accordingly, because other unchallenged grounds support the juvenile court's decision to terminate Mother's parental rights, there is no reason to review Mother's claim concerning unfitness.

¶4      Mother next argues that there was insufficient evidence to support the juvenile court's determination that it was in the best

interests of the children to terminate her parental rights. We disagree. The children were removed from Mother's care after the children were found wandering their neighborhood seeking ways to earn money so they could buy food and pay to get electricity reconnected to their home. After removal, DCFS began a trial home placement with Mother. Unfortunately, the children had to be removed once again after DCFS found that both the gas and electricity had again been turned off to their home and because the sanitary conditions in the home had been rapidly deteriorating. After trial home placement was terminated, Mother was evicted from the home. As of the date of the termination hearing she had not yet obtained a permanent home or a stable source of income that would allow her to take care of the children. Mother also had failed to provide evidence that she had completed many other aspects of her service plan, such as individual counseling, which would have allowed her to better deal with the issues that lead to the removal of the children. On the other hand, the children were in a legal risk foster home with a couple that wished to adopt them. The children's physical and emotional needs were being met and they were benefitting from the stability. Further, the juvenile court found that the children had made considerable changes for the better in both their emotional and physical development. Thus, because a foundation for the juvenile court's determination exists in the record, we cannot conclude that the juvenile court's decision that it was in the best interests of the children to terminate Mother's parental rights was against the clear weight of the evidence.

¶5 Mother next asserts that there was insufficient evidence to support the juvenile court's finding that DCFS made reasonable efforts to provide Mother with reunification services. After creation of the reunification plan, DCFS offered Mother amongst other things: (1) multiple assessments; (2) referrals for drug-testing, peer parenting, parenting classes, and therapy; (3) a referral to Workforce Services in order to allow Mother to

pursue employment opportunities; (4) support for arranging visitation with the children; and (5) bus passes that allowed Mother a means of transportation to her various obligations. Despite these efforts, Mother claims DCFS failed to adequately assist her in finding stable housing and employment or in arranging family therapy. However, the juvenile court findings, which are supported by the record, indicate that adequate services were provided. For example, in regard to employment, Mother's caseworker encouraged her to meet with the Department of Workforce Services to obtain an employment counselor, which Mother apparently did not do. Further, in regard to housing, at times Mother did not provide DCFS with updated information concerning her housing situation, for example, not informing DCFS that she had been evicted from her home or providing DCFS with her current address, thereby making it difficult for DCFS to assist Mother with her situation. Mother did inquire about a potential grant to assist her in obtaining housing; however, the caseworker concluded that Mother did not or could not meet the qualifications for obtaining the grant. Accordingly, the record supports the juvenile court's determination that DCFS made reasonable efforts to provide Mother with reunification services.

¶6     Finally, Mother contends that she was unfairly prejudiced by the State's failure to provide her with discovery in a timely manner and that the juvenile court erred in denying her motion to continue the trial. "The juvenile court has substantial discretion in deciding whether to grant or deny a request for a continuance, and that discretion will not be disturbed unless that discretion has clearly been abused." *In re V.L.*, 2008 UT App 88, ¶ 15, 182 P.3d 395. Mother received 246 pages of previously requested discovery on the day before trial was set to begin. As a result, Mother requested that the trial be continued in order to allow her to properly review the discovery. The juvenile court denied the motion. In so doing, the court noted that the trial was scheduled to take place over multiple days, thereby giving

Mother an opportunity to review the information before the second day of trial, which was to take place several days after the first day.[1] Further, the juvenile court ordered that, if needed, it would allow Mother additional trial dates to address the evidence and recall any witness. The record does not reveal any request by Mother to exercise this opportunity. While we do not condone the timing of the State's discovery disclosures, Mother has failed to demonstrate how the juvenile court abused its discretion in fashioning its remedy for the untimely discovery responses, or how she was prejudiced by the juvenile court's decision when she failed to take advantage of that remedy.

¶7    Affirmed.

_____

1. The State assured the court that it would not rely on any of the information during the first day of trial.